JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes and The Institutes LLC

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Robert W. Hayes, Cozen O'Connor
1650 Market Street, Suite 2800, Philadelphia, PA 19103 215-665-2000

## DEFENDANTS

Sydney Posner and The Claims xChange, Inc.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1836

Brief description of cause:
Misappropriation of trade secrets; breach of contract; conversion; breach of duty of loyalty

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE                                DOCKET NUMBER

DATE
11/14/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

NIOA

19-CV-5369

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 720 Providence Road, Suite 100, Malvern, PA 19355-3433 _____

Address of Defendant: _____ 1960 SW 68th Avenue, Plantation, FL 33317 _____

Place of Accident, Incident or Transaction: _____ Chester County, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/13/2019 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 33099 _____
*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.   Federal Question Cases:**

- ☐ 1.   Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2.   FELA
- ☐ 3.   Jones Act-Personal Injury
- ☐ 4.   Antitrust
- ☐ 5.   Patent
- ☐ 6.   Labor-Management Relations
- ☐ 7.   Civil Rights
- ☐ 8.   Habeas Corpus
- ☐ 9.   Securities Act(s) Cases
- ☐ 10.  Social Security Review Cases
- ☑ 11.  All other Federal Question Cases
       *(Please specify):* _____

**B.   Diversity Jurisdiction Cases:**

- ☐ 1.   Insurance Contract and Other Contracts
- ☐ 2.   Airplane Personal Injury
- ☐ 3.   Assault, Defamation
- ☐ 4.   Marine Personal Injury
- ☐ 5.   Motor Vehicle Personal Injury
- ☐ 6.   Other Personal Injury *(Please specify):* _____
- ☐ 7.   Products Liability
- ☐ 8.   Products Liability – Asbestos
- ☐ 9.   All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Robert W. Hayes _____, counsel of record *or pro se plaintiff*, do hereby certify:

- ☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: 11/13/2019 _____ *Signature (if applicable)* _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 33099 _____
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | |
|---|---|
| The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes & The Institutes LLC<br>v.<br>Sydney Posner & The Claims xChange, Inc. | CIVIL ACTION<br><br>19    5369<br>NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   xxxxx

| | | |
|---|---|---|
| 11/14/2019 | *[signature]* | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-665-2094 | 215-701-2094 | RHayes@cozen.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes** *and* **The Institutes LLC,** 720 Providence Road, Suite 100 Malvern, Pennsylvania 19355-3433, | Docket No. _____ |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| **Sydney Posner** 1960 SW 68th Avenue Plantation, Florida 33317 *and* **The Claims Xchange, Inc.** c/o Registered Agent Sydney Posner 1960 SW 68th Avenue Plantation, Florida 33317, | |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiffs, The American Institute for Chartered Property Casualty Underwriters d/b/a

The Institutes ("AICPCU") and The Institutes LLC ( "The Institutes") (collectively "plaintiffs"),

by and through its undersigned counsel, file this Verified Complaint against Defendants Sydney

Posner ( "Posner") and The Claims Xchange, Inc. ("CXI"), to recover compensatory and

punitive damages and for an award of preliminary and permanent injunctive and declaratory

relief,  and, in support thereof, avers as follows:

## PARTIES

1.     The AICPCU is a non-profit, non-stock corporation organized and existing under

the laws of the Commonwealth of Pennsylvania and maintains it principal place of business at

720 Providence Road, Suite 100, Malvern, PA 19355-3433.

2.      The Institutes is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania that maintains its principal place of business at 720 Providence Road, Malvern, Pennsylvania.  The AICPCU is the sole member of The Institutes.

3.      Plaintiffs are lawfully authorized to do business in this Commonwealth and have legal capacity to maintain a suit in the courts of the Commonwealth.

4.      Posner ("Posner"), upon information and belief, is a citizen and resident of the State of Florida who resides at 1960 SW 68th Avenue, Plantation, Florida 33317.

5.      Upon information and belief, CXI is a not-for-profit corporation organized and existing under the laws of the State of Florida that maintains its principal place of business at 1030 Lake Avenue, Greenwich, Connecticut, 06831.  Posner is its registered agent.

## JURISDICITON AND VENUE

6.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 18 U.S.C. § 1836(b) and 28 U.S.C. § 1367 in that plaintiffs assert claims under the laws of the United States, including the Defend Trade Secrets Act of 2016 and the state law claims asserted herein are so related to plaintiffs' federal claims that they form part of the same case or controversy.  The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

7.      Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property at issue is located in this District.   Defendant Posner also consented to venue in this Court in an employment agreement executed with AICPCU.

8.      Defendants are subject to the personal jurisdiction of this Court in that they intentionally engaged in wrongful conduct the brunt of the harm from which they knew would be

2

inflicted upon plaintiffs in Pennsylvania.  Posner also consented to personal jurisdiction in any

court whose jurisdiction encompasses Chester County, Pennsylvania.

## ALLEGATIONS COMMON TO ALL COUNTS

A.   **Plaintiffs' Acquisition Of The Assets Of The Companies With Which Posner Is Employed**

9.      The AICPCU is an independent nonprofit organization providing educational

programs and professional designations and certifications in  property-casualty (P&C) insurance

and risk management.  It, *inter alia*, administers the CPCU designation (its premier designation)

through which those  professionals meeting specified ethical standards may achieve the CPCU

designation by passing eight national examinations covering various phases of risk management

and property-casualty insurance ("P&C Insurance"), and organizes and administers professional

continuing education programs and other conferences, and publishes industry reports, treatises

and other materials.

10.      Prior to June, 2018, AICPCU entered into negotiations with non-party Adam

Potter ("Potter") for the purchase of all the assets of Claims Pages, LLC ("CP"), C&E MGMT

and Planning, Inc. ("C&E"), and CLM Group, Inc., ("CLM") (collectively the "CLM Entities").

11.      The CLM Entities were a professional association of P&C Insurance

professionals, including attorneys, involved in claims resolution and litigation management, and

offered online news and reference sources for more than 200,000 insurance claims professionals.

The CLM entities organized and hosted nationally recognized conferences and seminars

addressing a broad variety of issues in property and casualty claims and litigation management.

12.      AICPCU formed The Institutes for the purpose of acquiring the assets of the CLM

Entities and continuing their business.

3

13.     On or about June 1, 2018, The Institutes entered into an Asset Purchase Agreement ("the Purchase Agreement") with Potter, Moxie HC, LLC ("Moxie"), and the CLM Entities to acquire all of those Entities' assets.

14.     The Institutes have, to date, paid $17,329,098 for the assets of the CLM Entities.

15.     A material factor in the price negotiated for the assets of the CLM Entities was their database of prior attendees, sponsors of and speakers at P&C Insurance claims resolution and risk management seminars and conferences, curricula and syllabuses for seminars and conferences, manuals, articles and journals for distribution to members and other highly valuable trade secret information.

16.     Upon information and belief, the databases were developed over multiple years by compiling attendance, sponsorship and speaker information, integrating information enrollment data, research and analysis to identify prominent speakers on current topics in P&C Insurance.

17.     The curricula and syllabuses were also developed over multiple years through the expertise of CLM employees and its membership who have significant experience in various issues of interest to the claims and litigation management community.

18.     CLM also maintained documents containing passwords used by certain members to access the CLM website and purchase or view CLM offerings as well as documents containing lists of adjuster names and license numbers (which state departments of insurance utilize to identify insurance adjusters).

19.     The information in the databases, curricula, syllabuses, articles, password documents and other materials could either not be recreated or could not be recreated without substantial cost, time and effort.

4

20.     CLM represented that access to the databases, curricula, syllabuses, and password protected files was limited to individuals with an employment related reason to review them, and plaintiffs have maintained the confidentiality of this information since acquiring the assets of the CLM Entities.

21.     In Section 6.12, the Asset Purchase Agreement, the CLM Entities, Potter and Moxie agreed that, for five years, they would not and would prevent their affiliates from competing in any of the business in which the CLM Entities were engaged prior to the acquisition and would not own, manage or operate any entity that engages in those businesses with the exception of certain specified "Permitted Activities."

22.     At the time of the acquisition, Potter also owned Business Insurance, Inc. ("BI"), that was then affiliated and/or acted in association with the CLM Entities.  As a Potter affiliate, BI was subject to the noncompetition provisions specified in the Asset Purchase Agreement. Nevertheless, BI began to wrongfully compete against plaintiffs.

23.     After the acquisition, The Institutes assumed control of all of the operations of CLM and, currently, CLM is now only used as a trade name.

B.     **Plaintiffs Hire Posner**

24.     At the time The Institutes acquired the CLM Entities, Posner was employed by CLM as its Chief Relationship Officer.

25.     In anticipation of the acquisition, by letter dated May 28, 2018, AICPCU offered Posner the full-time position of Chief Relationship Officer.

26.     As set forth in detail in the May 28 offer letter, AICPCU offered Posner, *inter alia*, a $124,000 annual salary and a $15,000 retention bonus and an attractive benefit package, including health, life and disability insurance (some of which required employee contributions).

27.     On page 2 of the May 28 letter, several conditions and contingencies to AICPCU's employment offer were set forth, including the execution of the Confidentiality, Non-Solicitation and Noncompetition Agreement that was intended as an addendum to the offer letter. A proposed Confidentiality, Non-Solicitation and Noncompetition Agreement was enclosed with the letter.

28.     In subsequent discussions, Posner requested that AICPCU also pay her commissions and advised that she had referred the draft Confidentiality, Non-Solicitation and Noncompetition Agreement to her attorney for comment..

29.     By revised offer letter dated May 30, 2018, but forwarded on June 6th, AICPCU restated its offer of employment to Posner and added eight percent commissions on all sales for which she was responsible. A true and correct copy of the revised offer letter is attached hereto, made a part hereof, and marked Exhibit A. The employment offer continued to be conditioned, *inter alia*, on the execution of a Confidentiality, Non-Solicitation and Noncompetition Agreement.

30.     Following a telephone conference with AICPCU on June 6, 2018, Posner returned the Confidentiality, Non-Solicitation and Noncompetition Agreement to AICPCU with red-lined edits and an attorney note that Posner should receive severance payments in exchange for agreeing to noncompetition provisions.

31.     By June 7, 2018 email, a true and correct copy of which is attached hereto, made a part hereof and marked Exhibit B, AICPCU offered to delete the noncompetition provision and attached a further revised second page of the May 30 offer letter that deleted "noncompetition" from the prior reference to a Confidentiality, Non-Solicitation and Noncompetition Agreement and an edited version of the marked-up draft of the Confidentiality, Non-Solicitation and

Noncompetition Agreement that Posner had returned to AICPU with "Noncompetition" lined out in the title and other revisions.

32.     AICPCU advised that "[w]e changed the title to the agreement and deleted references to "noncompetition" throughout.  Hopefully this is a happy middle ground to protecting you and protecting us."  (*See*, Exhibit B.)

33.     By return email on June 7, 2018 at 2:06 pm, a true and correct copy of which is attached hereto, made a part hereof and marked Exhibit C, Posner advised that this "is extremely fair.  I have attached the signed agreement."

34.     Posner enclosed with the June 7 email a signed copy of page 2 of the May 30 revised offer letter, thereby agreeing to the terms of the May 28 letter and what was now a Confidentiality and Non-Solicitation Agreement as edited and agreed to by the parties and attached to Ms. Horowitz's June 7, 2018 email.

35.     That Agreement included a consent to jurisdiction clause for the state and federal courts of Chester County, Pennsylvania.  Specifically, Posner "acknowledge[d] that the Company is headquartered in Chester County, Pennsylvania and consent[ed] to the jurisdiction of the state and federal courts of that venue because any harm that the Company incurs will likely occur there, even if it may also occur elsewhere."

36.     Although hired by AICPCU, Posner's job responsibilities included selling sponsorships for CLM events, advertisements for CLM publications and/or sponsorships for the events of other AICPCU companies and brands.

C.     **Posner's Disloyalty To Plaintiffs**

37.     As a full time employee of AICPCU, Posner owed plaintiffs duties of loyalty and to devote all of her professional activities to them.

7

38.     Posner failed to devote all of her professional activities to plaintiffs' interests and, instead, placed her own interests and/or the interests of her brother above plaintiffs' interests.

39.     Despite the substantial salary, bonuses and benefits she received from plaintiffs, during the course of normal business hours, Posner utilized plaintiffs' equipment and computers for her personal gain, including to obtain fees for referring entities who were candidates to sponsor plaintiffs' events.

40.     Some—but not all—of Posner's actions and omissions that exemplify the types of beaches of her duty of loyalty that Plaintiffs have had to endure are listed below in this Complaint.

41.     Without limiting the generality of the foregoing, on or about August 19, 2019, Posner sent the following email from plaintiffs' email system using the email address they assigned her to engage in business on their behalf:

> **From:** Sydney Posner <sydney.posner@theclm.org>
> **Sent:** Monday, August 19, 2019 9:38:59 AM
> **To:** Adam Potter <adam.potter@businessinsurance.com>
> **Subject:** Women to Watch
>
> I have an interested sponsor for this year and next...would you consider a finders fee?
>
> 
>
> **Ms. Sydney Posner**
> Chief Relationship Officer
>
> 
>
> 4100 S. Hospital Drive, Suite 209
> Plantation, FL 33317
> Direct: 954-562-0539
>
> *"Our industry is all about relationships and resolution. Resolution is the business - but relationship is the umbrella over all of it."*

42.     The "Women to Watch" conference was formerly a joint event run by CLM and BI.

43.     The "interested sponsor" of the Women to Watch conference was Franco Signor which is a customer of the CLM.

44.     Posner did not inform plaintiffs of Franco Signor's interest in sponsoring events.

45.     On or around August 19, 2019, Posner learned that her brother and/or his company would pay her a finder's fee for referring to them an interested sponsor.

46.     On or around August 19, 2019 at 11:12 am, Posner sent the following email message to representatives of BI and Franco Signor with a copy to her brother (Potter) using the email system owned by The Institutes and the email address plaintiffs provided to Defendant Posner:

> **From:** Sydney Posner <sydney.posner@theclm.org>
> **Date:** Monday, August 19, 2019 at 11:12 AM
> **To:** BI - Jeremy Campbell <jcampbell@businessinsurance.com>, Jesse Hamby <jesse.hamby@francosignor.com>
> **Cc:** Adam Potter <adam.potter@businessinsurance.com>
> **Subject:** Women to Watch
>
> Hi Jeremy,
>
> Allow me to introduce you to Jesse Hamby, VP of Marketing at Franco Signor.  They are interested in the Women to Watch event this year AND next year.  Feel free to communicate directly with Jesse – he is a long standing friend of mine – so take good care of him 😊
>
> Best,
>
> *Sydney*
>
> **Ms. Sydney Posner**
> Chief Relationship Officer
>
> 
>
> 4100 S. Hospital Drive, Suite 209
> Plantation, FL  33317
> Direct: 954-562-0539
>
> *"Our industry is all about relationships and resolution.  Resolution is the business – but relationship is the umbrella over all of it."*

47.     Posner did not inform plaintiffs about her referral of Franco Signor's interest in sponsoring events to BI.

48.     On or around August 20, 2019 at 6:24 am, Posner received the email below from

Potter through the plaintiffs' email system and at the email address provided by The Institutes:

> **From:** Adam Potter <adam.potter@businessinsurance.com>
> **Sent:** Tuesday, August 20, 2019 6:24 AM
> **To:** Sydney Posner <sydney.posner@theclm.org>
> **Subject:** Re: Women to Watch
>
> FYI – they purchased a sponsorship for $8,500.  Will send you a 850 payment (10%).  Do you use quickpay or Zelle?
>
> Adam Potter
> Chief Executive Officer
> (212) 724-2345
>
> BUSINESS
> INSURANCE.

49.     Posner did not inform plaintiffs about her agreement with her brother and/or his

company for a fee for referring Franco Signor to BI.

50.     On or around August 20, 2019 at 7:52 am, Posner sent the following email

message to Potter using plaintiffs' email system and the email address they provided Posner:

> **From:** Sydney Posner <sydney.posner@theclm.org>
> **Date:** Tuesday, August 20, 2019 at 7:52 AM
> **To:** Adam Potter <adam.potter@businessinsurance.com>
> **Subject:** RE: Women to Watch
>
> Thank you!  Much appreciated...I have Zelle
>
> *Sydney*
>
> **Ms. Sydney Posner**
> Chief Relationship Officer
>
> CLM
>
> 4100 S. Hospital Drive, Suite 209
> Plantation, FL  33317
> Direct:  954-562-0539
>
> *"Our industry is all about relationships and resolution.  Resolution is the business - but relationship is the umbrella over all of it."*

51.     Posner was prohibited from receiving cash from external sources and diverting

plaintiffs' clients or customers to external parties.

52.     At all times that Posner was an AICPU employee, it maintained a policy of prohibiting employees from engaging in outside employment creating a conflict of interest with their job responsibilities.

53.     At all times that Posner was an AICPCU employee, its employee policies required all employees to "avoid any possible conflict of interest or even the appearance of a conflict of interest."

54.     During the entire time Posner was employed with AICPCU, plaintiffs defined conflicts of interest as occurring "when employees have relationships, engage in activities, or have personal financial interests that might impair their independence of judgment or influence their actions concerning The Institutes' business. Conflicts of interest also exist when employees use their positions with The Institutes for personal gain outside The Institutes."

55.     Posner's referring clients or customers of AICPCU or The Institutes for a sponsorship opportunity at a competitor's event and, in so doing, procuring for herself a finder's fee, constituted a conflict of interest in violation of the policies of The Institutes and AICPCU.

56.     Those actions also violated Posner's duty of loyalty to plaintiffs.

**D.    Potter's Continuing Competition With The Businesses Sold To Plaintiffs**

57.     Despite the noncompetition provisions of the Asset Purchase Agreement, Potter and BI began competing against plaintiffs by offering seminars and conferences on subjects including claims and litigation management in the P&C Insurance field.

58.     Upon learning of this wrongful conduct, plaintiffs demanded Potter and BI cease and desist from this conduct and, when they failed to comply, plaintiffs filed a Complaint with the United States District Court for the District of Delaware.

59.     After the Delaware Complaint was filed, upon information and belief, Potter sold BI to non-party Stephen Acunto ("Acunto") (or an entity he controls or in which he has a

11

significant interest) in an effort to evade the injunctive relief sought in the Delaware action. Upon information and belief, Potter remains actively involved in and retains an ongoing economic interest in BI's business.

**E.     Posner's Termination And Subsequent Thefts**

60.     On September 20, 2019, AICPCU terminated Posner's employment.

61.     In its September 20, 2019 termination notice, AICPCU demanded that Posner promptly return to AICPCU all company property, including but not limited to electronic equipment, data, plans, correspondence or copies of the same (including any electronically stored copies), or other information or property in your possession or control about or relating to AICPCU or The Institutes, its past and present parents, subsidiaries, divisions, and related and affiliated organizations, and their respective past and present employees, clients, visitors, and business operations. AICPCU also informed Defendant Posner that she was not permitted to retain any reproductions of the foregoing items.

62.     After plaintiffs terminated her employment, Posner connected the laptop plaintiffs own and provided to her for purposes of her employment with The Institutes to one (1) or more external hard drive.

63.     Upon information and belief, the external drives Posner utilized included those manufactured by Seagate and WD.

64.     Posner used her company laptop to access approximately 1,200 of plaintiffs' files and downloaded or otherwise transferred those files to the external drives.

65.     Among the files that transferred and/or accessed included plaintiffs' data including, but not limited to, prior attendees, sponsors of and speakers at P&C Insurance claims and risk management seminars and conferences, curricula and syllabuses for seminars and

conferences, manuals, articles and journals for distribution to members and password protected customer information.

66.     Posner also accessed, downloaded and/or transferred the below-listed other highly valuable trade secret information:

    A.    Spreadsheets with internal pricing information and inventories maintained by The Institutes for its own use and/or the use of its divisions;

    B.    Spreadsheets showing discounts provided, customer purchasing history, and other similar information;

    C.    Spreadsheets and other files identifying amounts spent by customers;

    D.    Documents with personally identifying information of certain CLM members.

67.     Plaintiffs have at all times taken reasonable and appropriate steps to protect the data and files set forth above from unauthorized use or disclosure.

68.     The databases and other electronically stored information Posner accessed were located on drives to which plaintiffs granted only seven (7) individuals, including Posner, access. Plaintiffs also maintained contractual limitations on the use of their confidential business information.

**F.     Defendants' Conspiracy To Unlawfully Compete With Plaintiffs**

69.     According to the CXI's Articles of Incorporation on file with the State of Florida, CXI hired Posner as its Vice-President and appointed her a director as of October 1, 2019—the date on which CXI was incorporated.

70.     The Articles of Incorporation identify Acunto as the President of CXI and Carole Acunto as its incorporator and Secretary/Treasurer.

71.     On or about November 4, 2019, CXI announced Posner as its Executive Director effective November 15, 2019.

13

72.     In this announcement, Posner stated that CXI "will present several upcoming member events, the first set for December 4, 2019 at Rockefeller Plaza. Professionals are invited to join the organization at no charge."

73.     By November 2019, at least eight (8) separate firms or companies previously sponsoring CLM events and/or advertising with CLM were recruited to join, and did, in fact join, CXI's Board of Directors.

74.     Upon information and belief, including the speed with which CXI was incorporated after her termination, a Board of Directors was established and events were planned, organized and promoted, Posner decided well before her termination to join with Potter and Acunto in attempting to set up a rival organization that would wrongfully recapture the assets sold to plaintiffs and compete against them by, among others, soliciting their clients, vendors, advertisers and/or sponsors. Upon information and belief, Posner utilized Plaintiffs confidential information and trade secrets in these solicitations.

75.     Upon information and belief, Posner and CXI have continued to solicit plaintiffs' clients, vendors, advertisers and/or sponsors to terminate or limit their involvement with plaintiffs and, instead, to associate with CXI and BI. Defendants have utilized the confidential and trade secret and other information downloaded from plaintiffs' files to assist them in these efforts.

76.     CXI, BI and Posner have entered into an affiliation, joint venture or other association to compete with the Institutes in the specific segment of the P&C Insurance conference and seminars market in which the CLM Entities engaged in a concerted effort to deprive plaintiffs of the benefits of their acquisition of all of the assets of those Entities.

14

77.     Defendants will continue to engage in this wrongful conduct unless enjoined by the Court.

78.     Although Plaintiffs' rights cannot fully be remedied with legal relief only, Plaintiffs estimate that the legal damages they have incurred or will incur due to the actions or omissions of Defendants as set forth in this Complaint exceed the value of $150,000.00.

## COUNT I—BREACH OF CONTRACT
### Plaintiffs v. Posner

79.     Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 78 of this Complaint.

80.     By executing the May 28, 2018 offer letter in response to Horowitz's July 7, 2018 email forwarding a revised what was then a Confidentiality and Non-Solicitation Agreement, Posner expressed her acceptance of the May 28 offer letter's terms and to be bound by revised Confidentiality and Non-Solicitation Agreement in accordance with those terms (not comments) that were not lined out of the document.

81.     In accordance with the express terms of the Confidentiality and Non-Solicitation Agreement, Posner was bound by a contractual obligation of loyalty and to maintain the confidentiality of plaintiffs' confidential and other business information.

82.     Posner was also prohibited from soliciting plaintiffs' employees, clients, vendors and sponsors while employed with plaintiffs and for one year after her termination.

83.     By breaching her duty of loyalty to AICPCU, Defendant Posner violated the contractual obligation of loyalty contained in her contract with AICPCU.

84.     By downloading and/or removing confidential information of AICPCU and/or The Institutes when it was not necessary to do so in connection with performing her job duties,

Posner violated her contractual obligations to protect AICPCU and The Institutes' confidential information.

85.     By not returning confidential information of AICPCU and/or The Institutes, Posner violated her contractual obligations to return the property of AICPCU and The Institutes upon termination of her employment.

86.     By not returning data, files, or other property owned by AICPCU and/or The Institutes, Posner violated her contractual obligations to return the property of AICPCU and The Institutes upon termination of her employment.

87.     By soliciting clients, vendors, or sponsors of AICPCU and/or The Institutes for the purpose of diverting them from a relationship with AICPCU and/or The Institutes and/or to associate with Posner and/or CXI, Posner violated her contractual obligations to refrain from soliciting those clients, vendors, and sponsors within one year of the termination of her employment.

88.     By failing to advise AICPCU in writing of her employment, self-employment, or consulting services for CXI, Posner violated her contractual obligations to promptly inform AICPCU in writing of such activities and to provide sufficient detail to allow AICPCU to determine whether she is in violation of her agreement.

89.     Plaintiffs have been damaged by Posner's breaches of her contractual obligations.

90.     Plaintiffs have incurred costs relating to forensic investigation and analysis of the laptop formerly used by Posner.

91.     Plaintiffs have incurred costs relating to maintaining its relationships with its clients, vendors, and sponsors as a result of Posner's actions and solicitations.

16

92.     Upon information and belief, The Institutes has lost financial opportunities for sponsorships when Posner diverted those opportunities away from The Institutes and without informing The Institutes of those opportunities.

93.     The Institutes incurred costs for the wages, bonuses and commissions paid to Posner during the period of her disloyalty to The Institutes.

94.     The Institutes reasonably expects to incur additional costs, lost profits or sponsorships, and/or other financial and reputational harm due to Posner's breaches.

WHEREFORE, Plaintiffs demand judgment in their favor and against Posner for breach of contract, including all compensatory and expectancy damages resulting therefrom and for specific performance of her contractual obligations to Plaintiffs, and injunctive relief to restrain her competitive activities (including but not limited to CXI) using information she obtained or retained in violation of her contractual duties to Plaintiffs, and for all other relief that is just and proper.

### COUNT II—BREACH OF DUTY OF LOYALTY
**Plaintiffs v. Posner**

95.     Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 94 of this Complaint..

96.     Every employee owes a common law duty of loyalty to her employer under Pennsylvania common law.

97.     Defendant Posner breached her duty of loyalty to AICPCU and/or The Institutes by any and all of the following actions or omissions:

A.     By diverting the sponsorship opportunity of Franco Signor to BI;

B.     By failing to advise The Institutes of the sponsorship opportunity from Franco Signor;

17

C.  By failing to advise The Institutes that she earned a "finder's fee" from Business Insurance as a reward for providing the sponsorship opportunity from Franco Signor;

D.  Upon information and belief, by using confidential information of AICPCU and/or The Institutes acquired during the course of her employment for the use of CXI.

E.  Upon information and belief, by using confidential information of AICPCU and/or The Institutes acquired during the course of her employment for her own benefit.

F.  By using Plaintiffs' equipment, computers, networks, and email addresses for her personal gain and personal endeavors.

G.  By accepting a substantial salary and bonuses and by accessing confidential information while, at the same time, failing to failing to devote all of her professional activities and time to the interests of Plaintiffs.

H.  By other actions and omissions where Posner placed her personal interests ahead of the duty she owed to AICPCU as her employer.

98.  Posner negligently or intentionally failed to act for the benefit of AICPCU and/or The Institutes in all matters for which she was employed.

99.  Posner negligently or intentionally failed to act in good faith for the benefit of AICPCU and/or The Institutes in all matters for which she was employed.

100.  Plaintiffs have been damaged by Posner's breaches of her duty of loyalty to AICPCU and/or The Institutes.

101.  Plaintiffs have incurred costs relating to forensic investigation and analysis of the laptop formerly used by Posner.

102.  Plaintiffs have incurred costs relating to maintaining its relationships with its clients, vendors, and sponsors as a result of Posner's actions.

103.  Upon information and belief, The Institutes has lost financial opportunities for sponsorships when Defendant Posner diverted those opportunities away from The Institutes and without informing The Institutes of those opportunities.

18

104.    Plaintiffs incurred costs for the wages, bonuses and commissions paid to Posner during the period of her disloyalty to The Institutes.

105.    Posner's actions or omissions was a real factor in causing the aforementioned injuries to Plaintiffs.

106.    Defendant's Posner's actions, her high-level position at The Institutes, and the use of company resources to divert opportunities to a competitor are outrageous enough to support the imposition of punitive damages for the breach of her duty of loyalty.

WHEREFORE, Plaintiffs demand judgment in their favor and against Posner for breach of the duty of loyalty, including all compensatory damages resulting therefrom as well as for lost profits, prejudgment interest, punitive damages, and the forfeiture of all commissions, salaries, and expenses paid to her during the period of her disloyalty, for further injunctive relief to prohibit her from profiting off of her disloyalty by unfair competition, and for all other relief that is just and proper.

## COUNT III—UNFAIR COMPETITION

107.    Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 106 of this Complaint.

108.    Posner has unfairly competed against plaintiffs by, among others::

A.    Downloading and/or removing confidential information of AICPCU and/or The Institutes;

B.    Not returning to AICPCU and/or The Institutes all copies of its data and documents that she surreptitiously downloaded and removed;

C.    By serving as the registered agent for and executive director of CXI while in possession of confidential information and documents belonging to Plaintiffs;

D.    Upon information and belief, by setting up, engaging in competition activities with, and devoting professional time prior to the termination of her employment to the interests of CXI;

19

E.    Upon information and belief, by using confidential information and documents belonging to Plaintiffs to further the competitive activities of CXI or herself.

109.    By some or all of the following actions or omissions, CXI is liable for unfair competition against Plaintiffs:

A.    By offering substantial assistance to or by acquiescing in Posner's actions to download and/or remove confidential information of AICPCU and/or The Institutes;

B.    By permitting Posner to serve as registered agent for and executive director of CXI while she is in possession of confidential information and documents belonging to Plaintiffs;

C.    Upon information and belief, by interfering with Posner's duties of loyalty and contractual obligations to Plaintiffs prior to the termination of her employment;

D.    Upon information and belief, by using confidential information and documents belonging to Plaintiffs to further CXI's competitive activities of CXI or by permitting Posner to do so on behalf of CXI

110.    By their actions and omissions, Posner and CXI have caused damages to Plaintiffs and are continuing to cause damages to Plaintiffs.

111.    The only adequate remedy against Defendants' unfair competition is an injunction to enjoin Posner or CXI from competing against Plaintiffs for a reasonable period of no less than two years from the date of final judgment.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Posner and CXI for unfair competition, including all compensatory damages resulting therefrom as well as a permanent injunction prohibiting Posner and/or CXI from competing against Plaintiffs for a period of two years, and for all other relief that is just and proper.

## COUNT IV—TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### Plaintiffs v. CXI

112.    Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 111 of this Complaint.

113.    By using plaintiffs' confidential and proprietary information to compete against plaintiffs, defendants have tortuously interfered with plaintiff's favorable contractual relationships with their members, advertisers and/or sponsors.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant CXI for tortious interference with contract, including all compensatory damages resulting therefrom as well as all equitable relief, including a permanent injunction prohibiting CXI from competing against Plaintiffs for a period of two years, and for all other relief that is just and proper.

## COUNT V – AIDING AND ABETTING BREACH OF DUTY OF FIDUCIARY DUTY
### Plaintiffs v. CXI

114.    Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 113 of this Complaint.

115.    Upon information and belief, CXI was aware that Posner was under contractual obligations to Plaintiffs prior to engaging her in employment, self-employment, or a consulting relationship as its Executive Director or as Registered Agents.

116.    Upon information and belief, CXI was aware that Posner was under common law fiduciary duties to Plaintiffs, such as her duty of loyalty, prior to engaging her in employment, self-employment, or a consulting relationship as its Executive Director or as Registered Agent.

117.    Upon information and belief, CXI was aware that Posner surreptitiously downloaded documents, data, and confidential information belonging to AICPCU and/or The Institutes prior to engaging her in employment, self-employment, or a consulting relationship as its Executive Director or as Registered Agent.

118.    Upon information and belief, CXI was aware that Posner unlawfully and without authority retained documents, data, and confidential information belonging to AICPCU and/or

The Institutes prior to engaging her in employment, self-employment, or a consulting relationship as its Executive Director or as Registered Agent.

119. Notwithstanding CXI's awareness of Posner's misconduct, CXI engaged her as its Registered Agent ten days after the termination of her employment from AICPCU.

120. Notwithstanding CXI's awareness of Posner's misconduct, CXI engaged her as its Executive Director less than two months after the termination of her employment from AICPCU.

121. Through its actions with Posner, CXI has provided Posner with substantial assistance and encouragement to breach her contractual and fiduciary obligations to Plaintiffs.

122. Knowing the actions of Posner, CXI had the conscious intent to assist and/or encourage Posner in the breaches of her contractual and fiduciary obligations to Plaintiffs.

123. CXI has announced several competitive event and conferences designed to compete directly with those offered by The Institutes and, in fact, at the same locations and dates as those of The Institutes.

124. Together, CXI and Posner are acting in concert with one another and as part of a common design to unfairly degrade, devalue, and undermine AICPCU's $17 million acquisition of the assets of CLM.

125. By its own conduct and by giving substantial assistance to Posner, CXI has breached a duty to Plaintiffs.

WHEREFORE, Plaintiffs demand judgment in their favor and against CXI for aiding and abetting a breach of the duty of loyalty by Posner, including all compensatory damages resulting therefrom as well as for lost profits, disgorgement of profits tortuously obtained, prejudgment interest, punitive damages, return of property, for injunctive relief to prohibit unfair competition against Plaintiffs, and for all other relief that is just and proper.

## COUNT VI – CONVERSION AND REPLEVIN

126.    Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 125 of this Complaint.

127.    Plaintiffs hold title to its data, information, or other property, including but not limited to files contained on the laptop that was provided to Posner for her use during her employment.

128.    Posner has wrongfully acquired data, information, or other property that belongs to AICPCU and/or The Institutes and to which she was not entitled to possess as of the termination of her employment.

129.    Defendant Posner has not returned some or all of the data, information, or other property that belongs to AICPCU and/or The Institutes.

130.    Defendant Posner has withheld data, information, or other property that belongs to AICPCU and/or The Institutes from Plaintiffs and she has misused the same in defiance of Plaintiffs' rights to control it.

131.    Upon information and belief, the location of the data that Defendant Posner has failed to return to Plaintiffs is or was kept on the external hard drive(s) that Posner connected to the laptop owned and provided to her by The Institutes for purposes of her employment with The Institutes. The current location of that data and files is unknown to Plaintiffs.

132.    Plaintiffs are entitled to a writ of seizure to obtain the property that is the subject matter of this replevin action.

133.    Posner's continued possession of data and information that properly belongs to Plaintiffs will adversely affect Plaintiffs and permit Posner and CXI to unfairly compete against Plaintiffs using its own property, data, and information.

134.   Plaintiffs have incurred damages as a result of Posner's unlawful possession and/or retention of its property, including but not limited to, costs incurred for forensic investigation of the laptop.

135.   Upon information and belief, Posner has shared with CXI data, information, or other property that belongs to AICPCU and/or The Institutes.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants Posner and CXI for conversion and/or replevin, including all compensatory damages resulting therefrom as well as a writ of seizure to obtain the property Defendant Posner has unlawfully retained and withheld from Plaintiffs and/or delivered to Defendant CXI and further injunctive relief prohibiting Posner and/or CXI from competing against Plaintiffs for a period of two years and to restrain Posner's and CXI's competitive activities using the unlawfully withheld data belonging to Plaintiffs, and for an accounting of all devices to where Posner and/or CXI housed the property that Posner unlawfully retained and withheld from Plaintiffs and of all persons to whom Posner and/or CXI made available that property, and for all other relief that is just and proper.

## COUNT VII—VIOLATION OF DEFEND TRADE SECRETS ACT

136.   Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 135 of this Complaint.

137.   Plaintiffs owned and possessed certain confidential, propriety, and trade secret information, as alleged above in this Complaint.

138.   This confidential, proprietary, and trade secret information relates to plaintiffs' product offerings, customers, sponsors, and profit/cost information utilized to advertise conferences and other offerings throughout the United States and/or otherwise utilized in interstate commerce.

24

139.    Posner is using the confidential, propriety, and trade secret information of Plaintiffs to advance her personal and/or business interests, including but not limited advertising conferences through the United States, planning or administering conferences for which attendees will travel across state lines to attend, and/or otherwise engaging in interstate commerce, both directly and through CXI.

140.    Plaintiffs have taken reasonable measures to keep such information secret and confidential.

141.    This confidential, propriety, and trade secret information derives independent economic value from not being generally known to the public and not being readily ascertainable through proper means by others who could obtain economic value from the disclosure or use of the information.

142.    Posner misappropriated the confidential, propriety, and trade secret information in an improper and unlawful manner as alleged in this Complaint.

143.    Defendant Posner's misappropriation of the confidential, propriety, and trade secret information of Plaintiffs is and was intentional, knowing, willful, malicious, fraudulent, and oppressive.

144.    Defendant Posner has not returned all copies of the confidential, propriety, and trade secret information she obtained from Plaintiffs.

145.    Upon information and belief, Defendant Posner has utilized or is attempting to utilize the confidential, propriety, and trade secret information she obtained from Plaintiffs to further her own endeavors, including but not limited to CXI.

146.     As a direct and proximate result of Defendant Posner's conduct, Plaintiffs have suffered and, if Defendant Posner is not stopped, will continue to suffer immediate and irreparable injury and significant damages in an amount to be proven at trial.

147.     Plaintiffs' remedies at law are inadequate; accordingly, Plaintiffs seek (in addition to damages), injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

148.     Plaintiffs will suffer immediate and irreparable harm if Defendant Posner is permitted to continue to maintain or use its confidential, proprietary, and trade secret information and if Defendant CXI is continued to use its confidential, proprietary, and trade secret information obtained by Posner through improper or unlawful means.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendant Posner for misappropriation in violation of the Defend Trade Secrets Act, including all compensatory damages resulting therefrom as well as for exemplary damages, reasonable attorney's fees, disgorgement of profits tortuously obtained, prejudgment interest, injunctive relief, and for all other relief that is just and proper.

## COUNT VIII—DECLARATORY RELIEF

149.     Plaintiffs incorporate by reference, as if fully set forth herein, paragraphs 1 through 148 of this Complaint.

150.     On October 4, 2019, Defendant Posner demanded that Plaintiffs pay her two years of severance pay in the amount of $533,348.20 by October 9, 2019 "per the wording of our contract."

151.     Plaintiffs do not owe Defendant Posner any severance pay because the terms of the contract show that she demanded two years of severance pay in exchange for non-

competition restrictions and, in lieu of agreeing to provide two years of severance pay, The

Institutes instead removed the non-competition restrictions and advised Defendant Posner that

the revised agreement (that is, the agreement without two years of severance pay and without

non-compete restrictions) was a "happy middle ground to protecting you and protecting us."

152.    In the alternative, Plaintiffs do not owe Defendant Posner any severance pay

because she has breached her contract with The Institutes.

153.    In the alternative, Plaintiffs do not owe Defendant Posner any severance pay

because she has violated her duty of loyalty to The Institutes.

154.    After Plaintiffs removed the non-competition restrictions, Posner stated that the

agreement "is so extremely fair. I have attached the signed agreement."

155.    Accordingly, The Institutes does not owe Defendant Posner two years of

severance pay in the amount of $533,348.20 by October 9, 2019.

156.    In light of the fact that Posner claims she is owed severance pay under a contract

when she is, in fact, not owed severance pay, a dispute has arisen over the contractual obligations

of Plaintiffs vis-à-vis Posner.

157.    A live and justiciable case or controversy over the terms of the contract between

Plaintiffs and Posner and the legal rights or obligations of Plaintiffs with respect to severance

pay.

158.    The controversy between the parties is not theoretical or dependent upon events

that might occur in the future; on the contrary, the controversy is live, real, and Posner has

demanded immediate payment of severance money that is not due to her under the contract.

159.    Should the Court issue a declaratory judgment, such judgment would adjudicate the legal rights and/or obligations of the parties regarding severance pay and will end the controversy and uncertainty that currently exists between Plaintiffs and Posner.

160.    Only Plaintiffs and Posner have any legal claim or interest affected by the declaratory relief sought in this count. No party not joined in this action would be prejudiced should the Court issue a declaratory judgment.

WHEREFORE, Plaintiffs demand a declaratory judgment from this Court declaring that Plaintiffs do not owe and are not obligated to pay Defendant Sydney Posner severance pay in the amount of $533,348.20 or in any other amount.

<u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury for all actions so triable.

Respectfully submitted,

COZEN O'CONNOR

/s/

By: Robert W. Hayes
Jeffrey I. Pasek
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Phone: 215-665-2000
Fax: 215-665-2013

**VERIFICATION**

I, Peter L. Miller, hereby verify as follows:

    1.    I am the President and CEO of Plaintiff The American Institute for Chartered Property Casualty Underwriters ("AICPCU") and I am authorized by AICPCU and The Institutes LLC to make this Verification on behalf of Plaintiffs.

    2.    I have read the foregoing Verified Complaint and based upon my review of corporate records and documents as well as information provided to me by other AICPCU employees, I declare the facts therein to be true and correct.

    Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing statements are true and correct.

Executed on  November 14, 2019                                 
                                                  PETER L. MILLER

# **EXHIBIT A**

| | |
|---|---|
| **From:** | Horowitz, Katherine <horowitz@theinstitutes.org> |
| **Sent:** | Wednesday, June 6, 2018 9:19 AM |
| **To:** | Sydney Posner |
| **Subject:** | Offer letter |
| **Attachments:** | Offer Sydney Posner.pdf |

*Hi Sydney,*

*Here is the updated offer letter.*

*Thanks!*
*Kate*



**The Institutes®**
RISK & INSURANCE
KNOWLEDGE GROUP

HUMAN RESOURCES DEPARTMENT

May 30, 2018

Sydney Posner
1960 SW 68th Ave
Plantation, FL 33317

Dear Sydney,

We are pleased to extend you an offer of the Chief Relationship Officer position at The American Institute For Chartered Property Casualty Underwriters d/b/a "The Institutes"!

|  |  |
|---|---|
| Position: | Chief Relationship Officer |
| Rate: | $124,800 annualized |
| Effective Date: | June 1, 2018 |
| Retention Bonus: | The Institutes shall pay a one-time retention bonus in the amount of $15,000, less any applicable federal, state and local taxes as required by law, provided that you continue to be employed by The Institutes through December 31, 2018.  Retention bonus will be paid out no later than January 15, 2019. |
| Commission: | You will earn 8% commission on all sales.  Commissions will be paid out three times per year, after the following periods or events: commissions earned from sales during the period of January through June, commissions earned from sales during the period of July through December, and commissions earned from sales for the CLM Annual Conference. |
|  | You must be an active employee of The Institutes on the date of the commission payout to receive the commission pay. |

The anniversary date as a CLM employee of July 1, 2007 will be honored as the anniversary date for The Institutes.  Anniversary dates impact benefit eligibility. You will be eligible for medical, dental, vision and prescription benefits immediately.  The 2018 health insurance/vision plan will be provided by Aetna.  Dental benefits are provided by Delta Dental Insurance.

Additional benefits include:

- 401(K) Savings plan
- Life insurance in the amount of three times your annual salary with a $350,000 maximum
- Accidental Death & Dismemberment insurance
- Long-term disability coverage
- Following 26 weeks of consecutive service, you will be eligible for educational assistance. This reimbursement requires prior supervisor approval, and is reimbursed at 100% up to a maximum of $5,250 annually.

LEGAL\36435851\2

P  (610) 644-2100
F  (610) 640-9576

720 Providence Road, Ste 100
Malvern, PA 19355-3433

TheInstitutes.org



**The Institutes®**
RISK & INSURANCE
KNOWLEDGE GROUP

HUMAN RESOURCES DEPARTMENT

Some of these benefits require a financial contribution from the employee; others are totally funded by The Institutes. Some benefits also have certain eligibility requirements.  During your first few days of employment, we will meet to review these benefits in detail.

After a transition period, you will be paid semi-monthly (on the 15th and the last day of the month).  Any adjustments to your compensation and commission structure will be at the sole discretion of The Institutes in accordance with its business needs and expectations.

As a condition of your employment with The Institutes, you will be required to sign and return the enclosed Confidentiality, Non-Solicitation and Noncompetition Agreement.  We also are enclosing forms to complete for Human Resources and Payroll.

This offer of employment is subject to the following contingencies:

1.  Your employment is "at-will" and will continue "at will;" either party has a right to end an "at will" relationship at any time.  Only the President and CEO of The Institutes is authorized to change the at-will nature of your employment and any such change must be in writing, signed by the President and CEO.
2.  There are no guarantees on the terms or conditions of your employment other than those made in this offer.  Management reserves the right to review and change policies and benefits at any time.

If you have any questions, please give me a call at 610-644-2100, extension 7581.  Congratulations on your offer!

To accept this offer, kindly sign and date where indicated below no later than June 4, 2018 and return the signed letter, and the signed Confidentiality, Non-Solicitation and Noncompetition Agreement, to Human Resources.

Sincerely,

*Katherine E. Horowitz*

Katherine Horowitz
SVP & Chief Administrative Officer


_____                    _____
Sydney Posner                                              Date

LEGAL\36435851\2          P (610) 644-2100          720 Providence Road, Ste 100
                           F (610) 640-9576          Malvern, PA 19355-3433
                                                     TheInstitutes.org

# **EXHIBIT B**

From: "Horowitz, Katherine" <horowitz@theinstitutes.org>
Date: Thursday, June 7, 2018 at 10:53 AM
To: Sydney Posner <sydney.posner@theclm.org>
Subject: FW: Syd's Contract

Hi Sydney,

Please find attached updates to the agreement. We changed the title to the agreement and deleted references to "non-competition" throughout. Hopefully this is a happy middle ground to protecting you and protecting us.

Please let me know if you would like to discuss further.

Have a great day!

Kate

1

**The Institutes**

RISK & INSURANCE
KNOWLEDGE  GROUP                                     HUMAN RESOURCES DEPARTMENT

As a condition of your employment with The Institutes, you will be required to sign and return
the enclosed Confidentiality and, Non-Solicitation and Noncompetition Agreement. We also are
enclosing forms to complete for Human Resources and Payroll.

This offer of employment is subject to the following contingencies:

1. Your employment is "at-will" and will continue "at will;" either party has a right to end an "at
   will" relationship at any time. Only the President and CEO of The Institutes is authorized to
   change the at-will nature of your employment and any such change must be in writing, signed
   by the President and CEO.
2. There are no guarantees on the terms or conditions of your employment other than those
   made in this offer. Management reserves the right to review and change policies and
   benefits at any time.

If you have any questions, please give me a call at 610-644-2100, extension 7581.
Congratulations on your offer!

To accept this offer, kindly sign and date where indicated below no later than June 4, 2018 and
return the signed letter, and the signed Confidentiality and, Non-Solicitation and Noncompetition
Agreement, to Human Resources.

Sincerely,

*Katherine E. Horowitz*

Katherine Horowitz
SVP & Chief Administrative Officer


_____                    _____
Sydney Posner                                  Date

# Confidentiality and, Non-Solicitation ~~and Noncompetition~~ Agreement

In consideration of my employment by The American Institute For Chartered Property Casualty Underwriters d/b/a The Institutes, a Pennsylvania non-profit corporation ("the Company"), I acknowledge that I owe a duty of loyalty to the Company at all times to act in its best interest, to safeguard and protect its trade secrets and confidential information, and to make timely and forthright disclosures of information to it, and I hereby agree as follows:

## CONFIDENTIAL INFORMATION

I acknowledge that in the course of or incident to my employment I will obtain from the Company various trade secrets and other confidential business information (all of which is referred to herein as "Confidential Information").

Confidential Information means all information, whether or not it is specifically marked as confidential, that is not known by or generally available to the industry at large and that concerns the business affairs of the Company, its employees, and/or clients.

Confidential Information includes, among other things:

- information concerning the assets, business, plans or affairs of the Company including, without limitation, any know-how, strategic or business plans, products, designs, drawings, databases, internal research or development reports;

- information provided by clients, vendors and sponsors with the expectation that it will not be publicly disseminated by theCompany;

- marketing studies and strategies, sales, sales projections, sources of supply, costs, pricing, rebate and discount practices and product lead times;

- client and vendor lists (current or prospective), contact personnel, preferred distributors, suppliers, contractors, sponsors and vendors; and

- financial data, personnel information, and contracts.

## PROTECTING CONFIDENTIAL INFORMATION

I agree to hold Confidential Information in the strictest confidence and to use it solely for the benefit of the Company. I will not disclose, divulge, communicate, or use Confidential Information for the direct or indirect benefit of any person or entity other than the Company. I agree to take all reasonable precautions to protect Confidential Information from loss or disclosure, regardless of whether I create it in the course of my work or it is supplied to me by the Company, its clients or vendors.

**I will not download or otherwise remove Confidential Information from the Company, unless it is necessary for me to do so in connection with performing my job duties.**

I acknowledge and agree that under the inevitable disclosure doctrine my access to Confidential Information may serve to prohibit me from performing services post-employment for certain business entities if doing so would likely lead me to use, rely upon or disclose Confidential Information.

I will not disclose or cause others to disclose to the Company, nor induce the Company to use any information or material which is the property of other individuals or companies and which to the best of my knowledge is of a proprietary or confidential nature.

## RETURN OF PROPERTY

I agree to return to the Company all documents, materials, supplies, calling or credit cards, keys, passes, disk drives, and any other property or data that was the property of the Company, its

clients, prospective clients, vendors or sponsors or that was used in the course of my employment with the Company. The return of such items

Initial (by Employee)____ _
Initial (by THE COMPANY)___ _

shall be made at any time upon request of the Company, or at or before the time of termination, or if that is not possible, then as soon thereafter as is possible. Upon termination of employment for any reason, I will return all tangible copies of Confidential Information to the Company and at the Company's request I will certify under oath that all electronic copies of such information have been deleted from all computers to which I have access other than those of the Company.

### PROPRIETARY INFORMATION, INVENTIONS

I will make full and prompt disclosure in writing to an official of the Company of all Proprietary Information made or conceived during the term of my employment and hereby assign all Proprietary Information to the Company.

"Proprietary Information" means my interest in (a) any and all inventions, improvements, and ideas (whether or not patentable) made or conceived by me, either solely or jointly with others, at any time during my employment with the Company, and (b) any suggestions, proposals, writings and the like, of any sort whatsoever, including any interest in any copyright, which I develop and with which my work for the Company is concerned during my employment, or which relate or are applicable directly or indirectly to any phase of the Company's business. All such Proprietary Information shall be the exclusive property of the Company.

I agree to promptly execute and deliver to the Company without further consideration and at the Company's expense all documents necessary to: (i) assign to the Company all of my right, title and interest to Proprietary Information; and (ii) permit the Company to register; perfect and enforce its rights in such intellectual property rights. I agree to assist the Company in enforcing any of such intellectual property rights, including without limitation by cooperating in connection with the defense or prosecution of infringement claims relating thereto; provided that the Company reimburses me for any out of pocket expenses incurred by me in connection

with such assistance. The Company shall have the sole right at its sole discretion to bring actions to enforce any of such intellectual property rights. I hereby agree that all inventions, developments, improvements and designs created under this Agreement shall to the full extent permitted by law constitute "works made for hire" within the meaning of the United States copyright laws.

### RETAINED RIGHTS

It is my understanding, based upon assurances given to me by the Company, that it is the Company's policy to release to me any Proprietary Information developed by me which is not of interest to the Company, subject to the retention by the Company of an irrevocable, nonexclusive, royalty-free license, and that such release will be considered by the Company, when initiated by my written request disclosing the Proprietary Information requested to be released, and stating that I do not believe that it is related to subject matter of interest to the Company. The Company shall have the sole right to determine whether such Proprietary Information includes subject matter of interest to the Company.

This Agreement does not apply to any Proprietary Information made or conceived by me prior to my employment with the Company which is (a) embodied in a United States Letters Patent, Copyright Registration or an application for United States Letters Patent or Copyright Registration filed prior to the commencement of my employment; (b) in the physical possession of a former employer who owns it; or (c) as disclosed in detail in an attachment hereto.

### NO SOLICITATION

I will not solicit, respond to the solicitation of, or assist others in soliciting employees, former employees, clients, vendors or sponsors~~clients, vendors or sponsors~~ of the Company in an attempt to cause them to terminate their employment with the Company, to cease, decline or reduce doing business with the Company, and/or in any way interfere with the Company's existing or prospective business

Page **2** of 4

Initial (by Employee)_____    _
Initial (by THE COMPANY)___    _

relationships with them. My obligations under this paragraph will last during my employment with the Company and for the length of the Restricted Period as defined below.

### NON-COMPETITION

~~During my employment with the Company and for the length of the Restricted Period, I will not engage in or make plans to engage in any employment and/or business activity within the Restricted Territory that is in direct competition with the Business of the Company, whether as an employee, consultant, owner, employer, agent, principal, partner, corporate officer, director or in any other individual or representative capacity. I agree not to do indirectly that which I am prohibited from doing directly by this paragraph. The Restricted Period and the Restricted Territory applicable to my job with the Company are defined below.~~

### RESTRICTED PERIOD AND TERRITORY

The Restricted Period consists of the time when I am employed by the Company and for a period of 12 months after my employment ends, regardless of the reason. ~~The Restricted Territory consists of Florida and Pennsylvania., as well as any other state in which I service and/or solicit prospective and/or current clients, vendors or sponsors of the Company. For the avoidance of doubt, I understand and acknowledge that the Restricted Territory applies both to working in any capacity at a physical location within any of these states, as well as to business activity conducted in any of these states, even if I am not located within any of these states when conducting the business activity.~~

~~I acknowledge that the Restricted Period and Restricted Territory have been set based upon the nature of my job, that the Restricted Period represents the minimum period of time necessary to enable the Company to protect its legitimate business interests against any form of unfair competiti0n, and that neither the Restricted Period nor the Restricted Territory~~

### THE BUSINESS OF THE COMPANY

I understand that the Company currently provides resources, educational programming, events and other products and services for the insurance industry (all of which constitute the "Business of the Company"). I acknowledge that the Business of the Company is not static and that it may expand or contract during the time of my employment.

I understand that the non-solicitation ~~and non-competition~~ restrictions in this Agreement will apply only to those aspects of the Company's business for which I have been given access to Confidential Information.

### EDITING RESTRICTIONS

Considering the nature of my job duties, I acknowledge that the restrictions in this Agreement are reasonable and necessary for the protection of the Company. If any court determines that any of the covenants contained in this Agreement are unenforceable because of their duration, area or scope, the court shall reduce such covenant so that it becomes enforceable in its reduced form.

~~In the event that I violate any of the non-solicitation or non-competition obligations during the Restricted Period, if the law of the governing jurisdiction permits, the court is authorized to extend the length of the Restricted Period so that the Company has the full and uninterrupted benefit of the Restricted Period reduced only by the length of time between the cessation of my employment and my first violation.~~

### SUBSEQUENT EMPLOYMENT

During the Restricted Period I will promptly inform the Company's President in writing of all employment, self-employment and/or consulting services I perform, providing sufficient detail as to enable the Company to evaluate whether my activities are in violation of the provisions of this Agreement. I hereby authorize the Company to

~~will prohibit me from earning a livelihood after leaving the Company.~~

**Commented [REK1]:** Sydney must have severance of 2 years of salary and average bonus of last 2 years (including time prior to The Institutes purchase. This severance would apply to any enforcement of the Non-Competition and/or Restricted Period and Territory, including but not limited to termination For Cause.

**Commented [HL2]:** We are deleting the non-competition requirements.

Initial (by Employee)____   _
Initial (by THE COMPANY)___   _

inform my future or prospective employers of the provisions of this Agreement.

**DISPUTE RESOLUTION**
I recognize that any breach by me of this Agreement is likely to result in irreparable injury to the Company. I agree that the Company shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to enjoin me from activities in violation of this Agreement. The Company shall not be required to post bond as a condition of obtaining injunctive relief. I acknowledge that the Company is headquartered in Chester County, Pennsylvania and consent to the jurisdiction of the state and federal courts of that venue because any harm that the Company incurs will likely occur there, even if it may also occur elsewhere. In the event that the Company moves its headquarters out of Chester County, Pennsylvania, I hereby consent to the jurisdiction of the state and federal courts of the venue where the Company is incorporated or headquartered at the time.

**SURVIVING OBLIGATIONS**
I acknowledge and agree that my obligations under this Agreement will survive the termination of my employment and will apply regardless of the reasons for or circumstances of my termination.

**GOVERNING LAW**
The validity, interpretation and performance of this Agreement shall be governed by and construed under the laws of the Commonwealth of Pennsylvania without regard to the principles of

the conflicts of law and without regard to the rule of *contra proferetum*. If a court determines that the substantive law of Pennsylvania may not be applied to any particular provisions of this Agreement, then I consent to have the court apply the law of whatever jurisdiction may validly be applied and, if the law of more than one

jurisdiction may validly be applied, then I consent to have the court apply the laws of the jurisdiction(s) which are most favorable to giving full effect to the terms of this agreement.

**AMENDMENTS**
This Agreement may not be modified orally, but only by written agreement signed by me and an authorized officer of the Company, making express reference hereto.

**SUCCESSORS AND ASSIGNS**
This Agreement shall bind and be for the benefit of the Company, its successors and assigns, including without limitation any entity which may acquire any division or subsidiary of the Company or all or substantially all of the Company's assets or into which the Company is consolidated or merged. I understand and agree that my obligations hereunder are personal and may not be assigned or transferred by me.

> **Commented [REK3]:** Syd, you want Florida law to apply.

NAME

_____

_____

_____

> **Commented [REK4]:** See above.

ADDRESS

_____

_____

Date

_____

Page **4** of **4**

Initial (by Employee)____ _
Initial (by THE COMPANY)___ _

# **EXHIBIT C**

From: Sydney Posner <sydney.posner@theclm.org>
Date: Thursday, June 7, 2018 at 2:06 PM
To: "Horowitz, Katherine" <horowitz@theinstitutes.org>
Subject: RE: Syd's Contract


Hi Kate -


This is so extremely fair.  I have attached the signed agreement.


Thank you so much for listening and hearing me.  I truly appreciate you.


Best,


Sydney


Ms. Sydney Posner

Chief Relationship Officer


4100 S. Hospital Drive, Suite 209

Plantation, FL  33317

1

Direct: 954-562-0539

"Our industry is all about relationships and resolution. Resolution is the business - but relationship is the umbrella over all of it."

From: Horowitz, Katherine [mailto:horowitz@theinstitutes.org]
Sent: Thursday, June 7, 2018 10:52 AM
To: Sydney Posner <sydney.posner@theclm.org>
Subject: FW: Syd's Contract

Hi Sydney,

Please find attached updates to the agreement. We changed the title to the agreement and deleted references to "non-competition" throughout. Hopefully this is a happy middle ground to protecting you and protecting us.

Please let me know if you would like to discuss further.

Have a great day!

Kate

——

This e-mail and any attachments to it are confidential, privileged, and intended solely for the named addressee(s). The unauthorized use, disclosure, or alteration of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately and delete the e-mail.

2

# The Institutes

RISK & INSURANCE
KNOWLEDGE GROUP                              **HUMAN RESOURCES DEPARTMENT**

As a condition of your employment with The Institutes, you will be required to sign and return the enclosed Confidentiality and, Non-Solicitation and Noncompetition Agreement. We also are enclosing forms to complete for Human Resources and Payroll.

This offer of employment is subject to the following contingencies:

1. Your employment is "at-will" and will continue "at will," either party has a right to end an "at will" relationship at any time. Only the President and CEO of The Institutes is authorized to change the at-will nature of your employment and any such change must be in writing, signed by the President and CEO.
2. There are no guarantees on the terms or conditions of your employment other than those made in this offer. Management reserves the right to review and change policies and benefits at any time.

If you have any questions, please give me a call at 610-644-2100, extension 7581. Congratulations on your offer!

To accept this offer, kindly sign and date where indicated below no later than June 4, 2018 and return the signed letter, and the signed Confidentiality and, Non-Solicitation and Noncompetition Agreement, to Human Resources.

Sincerely,

*Katherine E. Horowitz*

Katherine Horowitz
SVP & Chief Administrative Officer

_____          6/1/18
Sydney Posner                              _____
                                           Date