IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS, *et al.* | : : : : | CIVIL ACTION NO. 19-5369 |
| *Plaintiffs* | : : | |
| v. | : : | |
| SYDNEY POSNER, *et al.* *Defendants* | : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    NOVEMBER 6, 2023

# MEMORANDUM OPINION

**INTRODUCTION**

In their operative complaint, Plaintiffs The American Institute for Chartered Property Casualty Underwriters d/b/a The Institutes, and The Institutes, LLC, (collectively, "AICPCU") asserted numerous claims against Defendant Sydney Posner ("Posner"), their former employee, and Defendant The Claims Xchange, Inc. ("Xchange"), Posner's current employer, (collectively, "Defendants"), premised primarily on Posner's alleged wrongful taking and use of confidential information belonging to AICPCU. By Order dated April 27, 2020, this Court dismissed several of AICPCU's claims, leaving only their claims for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and conversion. [ECF 34].

In response to the operative complaint, Posner asserted counterclaims against AICPCU for, *inter alia*, breach of contract and unpaid wages under the Pennsylvania Wage Payment and Collection Law (the "WPCL"), 43 Pa. Cons. Stat. § 260.1 *et seq.*, premised on her allegations that AICPCU failed to pay her earned commissions after her termination of employment on September 20, 2019. Following this Court's disposition of the parties' cross-motions for summary judgment,

this matter went to a jury trial, resulting in a verdict: (1) in favor of AICPCU on its breach of the confidentiality agreement, and awarding $48,830.45 in "nominal" damages; and (2) in favor of Posner on her breach of contract and WPCL claims in the same amount of $48,830.45. The jury also found that AICPCU had not met its burden with respect to its other claims.

Before this Court is AICPCU's renewed motion for judgment as a matter of law and/or motion for a new trial or to alter or amend judgment, filed pursuant to Federal Rules of Civil Procedure 50 and 59, [ECF 273], which Posner opposes, [ECF 276].[1] The issues raised by the parties have been fully briefed and are ripe for disposition. For the reasons set forth herein, AICPCU's motion is granted *in part* and denied *in part*.

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts, evidence and procedural history of this action are well known to the parties and will be recited only to the extent necessary to address the issues raised. Most relevant to the Court's resolution of the underlying motion, however, is the procedural history surrounding this Court's resolution of AICPCU's motion for summary judgment with respect to Posner's claims for unpaid commissions.

Following the close of discovery, AICPCU filed a motion for summary judgment, in which it sought judgment as to all of Posner's claims for unpaid commissions. [ECF 124]. In that motion, AICPCU proffered its interpretation of the various commission agreements and argued that Posner had failed to present evidence sufficient to show that she had earned the commissions pursuant to the terms of her employment agreement. In response, Posner proffered her own interpretation of the commission provisions and evidence she maintained showed that she had not been paid earned commissions. [ECF 130].

---

[1]   This Court has also considered Plaintiff's reply. [ECF 284].

By Memorandum Opinion dated June 22, 2022, this Court interpreted the parties' written agreement with respect to Posner's commissions and determined, as a matter of law, that the terms specific to Posner's commissions were modified during various stages of her employment. The governing terms of the modifications are summarized as follows:

### *Commission Terms Applicable From Inception of Employment Until September 2018*

From the inception of Posner's employment until September 2018, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. AICPCU was required to pay Posner these commissions only after the sponsor paid for the sponsorship in full, but regardless of whether the event had yet occurred. AICPCU was required to pay Posner for these particular sales at the end of the following periods: January through June; and July through December. In addition, any sales that Posner made for the CLM Annual Conference were to be paid after the sponsor paid for the sponsorship in full and after the CLM Annual Conference occurred.

### *Commission Terms Applicable From September 2018 Until July 1, 2019*

From September 2018 until July 1, 2019, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. AICPCU was required to pay Posner these commissions only after the sponsor paid for the sponsorship, in full, but regardless of whether the event had yet occurred. AICPCU was required to pay Posner for these particular sales quarterly: on January 15, April 15, July 15, and October 15.

### *Commission Terms Applicable From July 1, 2019 Until End of Employment*

From July 1, 2019, until the end of Posner's employment, AICPCU was to pay Posner an 8% commission on all sales of sponsorships. Beginning on July 1, 2019, however, commissions were not earned until a sponsor paid for an event in full *and* the event occurred. AICPCU was required to pay Posner for these particular sales in the first payroll of each month.

(*See* Mem. Op., ECF 139, at pp. 13-15). Notably, at each of these three time periods of Posner's employment, Posner was only entitled to a commission if she was still employed by AICPCU when all conditions for payment were satisfied and when the payment was to be paid.

In response to AICPCU's motion for summary judgment and in support of her claims for commissions, Posner provided the evidence that she maintained showed the commissions that she

had earned and that AICPCU had not paid. Specifically, Posner relied exclusively on her declaration and two attached spreadsheets, Exhibit C and Exhibit D, to meet her summary judgment burden with respect to her unpaid commissions claims. Based on the Court's above interpretation of the parties' agreement on commissions (and various modifications thereto), this Court held that Posner could only recover: (1) commissions for sales identified on Exhibit C that were paid in full prior to July 1, 2019; and (2) commissions for sales identified on Exhibit D for events that occurred and were paid in full by August 30, 2019. (*Id.* at pp. 15-18).

Following the Court's disposition of the parties' cross-motions for summary judgment, this matter proceeded to a jury trial on the parties' respective remaining claims. Both parties made oral motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 50(a), which this Court denied. In its Rule 50 motion, AICPCU argued that: (1) AICPCU was entitled to judgment as a matter of law on its claims for breach of the confidentiality provision; (2) AICPCU was entitled to judgment as a matter of law on Posner's wage claim because Posner was not a Pennsylvania employee under the statute; (3) Posner was not entitled to liquidated damages because she had not met her burden of showing that AICPCU had acted in bad faith when failing to pay her earned commissions; (4) AICPCU was entitled to judgment as a matter of law on Posner's breach of contract counterclaim because the commissions she sought were precluded by the Court's previous decision on summary judgment; and (5) Posner had failed to establish that the commissions identified on Trial Exhibit D91A were earned but unpaid. [ECF 248].

At the conclusion of the trial, the jury returned a verdict:

(1) in favor of AICPCU on its contract claim for breach of the confidentiality provision of the employment agreement—judgment in the "nominal" amount of $48,830.45;

4

(2) in favor of Posner on AICPCU's claims for breach of the non-solicitation provision of the employment agreement, misappropriation of trade secrets, and breach of the duty of loyalty; and

(3) in favor of Posner on her claims for unpaid commissions—judgment in the amount of $48,830.45.

[ECF 262].

The jury also found that AICPCU was not entitled to punitive damages and that AICPCU had failed to prove by clear and convincing evidence that its failure to pay Posner commissions was done in good faith. [*Id.*].

Following the entry of judgment on the jury's verdict, AICPCU filed the underlying renewed motion for judgment as a matter of law and/or motion for new trial or to alter or amend judgment pursuant to Federal Rules of Civil Procedure 50 and 59, [ECF 273], which Posner has opposed, [ECF 276].

**LEGAL STANDARD**

    **A. Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure ("Rule") 50 allows a party to seek judgment as a matter of law after the jury's verdict. *See* Fed. R. Civ. P. 50(b). A court may grant this relief if, upon review of the evidence in a light most favorable to the non-movant, the verdict is not supported by legally sufficient evidence as a matter of law. *See Neville Chem. Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir. 1970). The court may not weigh evidence, assess credibility, or substitute its judgment of the facts at trial for that of the jury, but it may examine any evidence from which the jury may have determined its verdict and displace it when "the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Fineman v. Armstrong Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).

### B. Motion to Alter or Amend Judgment

Rule 59 permits a party to move to alter or amend judgment within 28 days after judgment is entered. *See* Fed. R. Civ. P. 59(e). Such a resolution may be warranted to "correct a clear error of law or prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotations omitted). A clear error of law exists when, "after reviewing the evidence, [the court is] left with a definite and firm conviction that a mistake has been committed." *See Lett v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers, Loc. 1594*, 2023 WL 3305170, at *2 (E.D. Pa. May 8, 2023) (quoting *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016)). While Rule 59(e) permits a court to alter or amend a judgment, it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008).

### C. Motion for New Trial

Alternatively, the Court may grant a new trial under Rule 59(a). *See LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F. Supp. 2d 345, 351 (D. Del. 2000), *aff'd*, 13 F. App'x 940 (Fed. Cir. 2001) ("[T]he standard for grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law[.]"). Rule 59(a) provides that the "court may, on motion, grant a new trial on all or some of the issues—and to any party—after a jury trial, for any reason for which a new trial has heretofore been granted at law in federal court." Fed. R. Civ. P. 59(a). "A new trial may be granted when the jury's verdict was tainted by confusion, against the weight of the evidence, or unjust." *Heath v. City of Phila.*, 1997 WL 560606, at *3 (E.D. Pa. Aug. 22, 1997) (quoting *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992)). "A district court may also grant a new trial if it erred on a matter of law, such as an evidentiary ruling." *Id.* (quoting *Klein v. Hollings*, 992 F.2d

6

1285, 1289–90 (3d Cir. 1993)).  Other "common reasons for granting a new trial," include "improper conduct by an attorney . . . [that] unfairly influenced the verdict." *LifeScan, Inc.*,103 F. Supp. 2d at 351.

**DISCUSSION**

### A. *Posner's Claims for Unpaid Commissions*

In its motion, AICPCU essentially seeks a judgment or modified judgment in its favor on Posner's counterclaims for unpaid commissions on the grounds that:  (1) Posner failed to adduce evidence of the commissions that were due and owed to her as of the date of her termination; (2) Posner was not entitled to liquidated damages under the WPCL; and (3) the WPCL is inapplicable to Posner given her status as a resident of Florida.  AICPCU primarily argues that under the standards set forth above, the jury's verdict in favor of Posner on her unpaid commissions claim must be either vacated or modified because it conflicts with this Court's summary judgment opinion.  This Court agrees, *in part*, and for the reasons expressed below, will modify the judgment to be consistent with this Court's summary judgment opinion.

At trial, Posner testified extensively as to sales she purportedly made for which she was not paid commissions.  As part of her testimony and evidence, Posner introduced two spreadsheets, Trial Exhibits D91A and D91B, which contained information relating to Posner's sponsorship sales.  The information in these two exhibits was extrapolated by Posner from a spreadsheet and other documents produced by AICPCU.  These two exhibits included, *inter alia*, the following information:  the name of the Posner client, the amount of the sponsorship sale, the date the client fully paid, and the date of the event.  The two exhibits tallied Posner's unpaid commissions at $57,149.78.  During closing arguments, however, Posner's counsel expressly requested an award on Posner's unpaid commissions claim in the amount of $48,830.45.

As evidenced by the jury's verdict, the jury accepted Posner's testimony with respect to the unpaid commissions. However, as argued by AICPCU, the amount of the jury's award, $48,830.45, conflicts and cannot be reconciled with this Court's legal interpretation of Posner's commission agreements.

As set forth above, this Court determined, as a matter of law, the terms governing Posner's commission agreements in its summary judgment opinion. Specifically, this Court determined that Posner was entitled to commissions for: (1) sponsorships sold and fully paid between September 2018, and July 1, 2019; and (2) sponsorships sold and fully paid between July 1, 2019, and September 1, 2019, for events occurring before September 1, 2019. This Court has carefully reviewed the sales listed on Trial Exhibits D91A and D91B and determined, as a matter of law, and consistent with this Court's summary judgment opinion, that *only* a subset of the transactions identified on Trial Exhibit D91A meet the terms for commissions as determined in the Court's summary judgment opinion.[2] The commissions on these sales total $38,399.82. This Court will enter an Order modifying the judgment accordingly.

---

[2]   The following transactions listed on Trial Exhibit D91A (identified by row number) qualify for commissions: 29, 49, 51, 57, 67, 73, 75, 77, 79, 82, 83, 86, 88, 90, 92, 93, 94, 97, 1000, 102, 103, 124, 125, 40, 141, 147, 149, 156, 165, 182, 188, 193, 203, 215, 217, 218, 223, 224, 225, 231, 232, 236, 238, 241, 242, 245, 248, 249, 252, 255, 256, 258, 263, 264, 273, 275, 276, 278, 321, 335, 337, 348, 60, 366, 371, 372, 384, 396, 397, 403, 421, 422, 426, 431, 441, 443, 449, 536, 544, 547, 550, 555, 556, 558, 559, 560, 561, 563, 564, 565, 566, 567, 569, 570, 571, 573, 574, 576, 577, 578, 579, 580, 581, 582, 584, 586, 587, 588, 589, 590, 591, 592, 594, 595, 596, 597, 599, 687, 695, 696, 700, 718, 723, 724, 725, 726, 729, 731, 738, 741, 743, 744, 749, 750, 752, 757, 764, 769, 770, 771, 780, 781, 796, 802, and 821. Each of these transactions involved a sponsorship sale that was fully paid before July 1, 2019, or a sponsorship sale that was fully paid before September 1, 2019, for an event that occurred before September 1, 2019.

None of the transactions listed on Trial Exhibit D91B qualify for commissions because they all involved sponsorship sales that were governed by the July 1, 2019 commission payout modification for events that did not occur until September 2019. Commissions on these sales were not owed until the first payroll in October 2019, a point in time when Posner was no longer employed by AICPCU.

### B. *Liquidated Damages*

AICPCU challenges the award of liquidated damages on Posner's unpaid commissions claim, arguing that: (1) Posner was not a covered employee under the Pennsylvania Wage Payment Collection Law; (2) the verdict in favor of AICPCU on its own claim for breach of the confidentiality provision establishes its right to a set-off such that it could not have acted without good faith as required for an award of liquidated damages under the statute; and (3) the jury's finding that AICPCU failed to prove by clear and convincing evidence that their failure to pay Posner commissions was done in good faith lacked evidentiary support. Each of these challenges to the liquidated damages award is without merit and will be addressed separately.

AICPCU argues, as it did during the jury instruction charging conference, that Posner is not a covered employee under the WPCL and, thus, is not entitled to an award of liquidated damages. For the reasons stated during the charging conference, this argument was and continues to be rejected. Specifically, it is undisputed that Posner's employment agreement contained a Pennsylvania choice-of-law provision. As such, Posner is entitled to the protections provided by the WPCL. *See McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 629 (E.D. Pa. 2009) (collecting cases holding that WPCL applies to out-of-state employee where employment agreement contained a Pennsylvania choice-of-law and/or venue provision); *Carlson v. Qualtek Wireless LLC*, 2022 WL 3229399, at *15, n.147 (E.D. Pa. Aug. 10, 2022); *Morgan v. Arion Cap. Mgmt., LLC*, 2022 WL 2805329, at *5 (E.D. Pa. July 15, 2022).

AICPCU also argues that the verdict in favor of AICPCU on one of its own claims establishes its right to a set-off such that it could not have acted without good faith as required for liquidated damages under the statute. Though AICPCU asserted set-off as an affirmative defense in its answer to Posner's counterclaims, AICPCU never argued that its set-off affirmative defense

9

constituted good faith under the WPCL prior to raising this argument now in its underlying motion. Indeed, AICPCU has maintained throughout this litigation that it did not owe Posner any commissions. As such, AICPCU's set-off/good faith argument was waived. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 220 (3d Cir. 2021) (finding argument raised in a renewed post-trial Rule 50 motion not raised in original Rule 50 motion waived); *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 574 (Pa. Super. Ct. 2006) ("[I]f an employer withholds wages based on a dispute with the employee that would result in a set-off, the employer's reliance on the set-off must be held in good-faith. Otherwise, the employee is entitled to additional, liquidated damages . . . .").

Finally, AICPCU argues that the evidence at trial demonstrated as a matter of law that it acted in good faith. In support of this argument, AICPCU relies on trial evidence that it argues shows that it paid Posner commissions during the course of her employment pursuant to established practice. However, as this Court previously determined, the parties' purported "established practice" was contrary to the terms of the parties' written commissions agreement. In addition, the parties introduced evidence showing that AICPCU retroactively modified the terms of the commission payout structure less than two months before it terminated Posner's employment. Further, Posner put on evidence showing her attempts to resolve the commission issues before and after AICPCU commenced this litigation. In light of this conflicting evidence, there is no basis for this Court to overturn the jury's findings on the good faith issue, an issue reserved for the factfinder. *Huang v. BP Amoco Corp.*, 271 F.3d 560, 565 (3d Cir. 2001) ("Under Pennsylvania law, whether a party has made a good-faith effort is a question of fact."); *Kairys v. S. Pines Trucking, Inc.*, 2021 WL 2073797, at *14 (W.D. Pa. May 24, 2021) (reserving issue of bad faith for wage claim for jury); *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 564, 574 (Pa.

Super. Ct. 2006) (holding in wage claim case that "the issue of good faith was properly a question for the jury").

### C. Breach of Non-Solicitation Provision

AICPCU argues that the jury's verdict should be vacated in favor of Posner on AICPCU's breach of the non-solicitation provision claim because it is against the weight of the evidence. However, AICPCU did not raise any issues with respect to its claim for breach of the non-solicitation provision in its Rule 50(a) motion at the close of Posner's case. As such, the argument is waived. *See Kars 4 Kids Inc.*, 8 F.4th at 220.

### D. New Trial Based Upon the Introduction of Prejudicial Evidence

AICPCU also argues that it should be given a new trial because of the introduction, by Posner's counsel, of various irrelevant and highly prejudicial evidence at trial that AICPCU now contends unfairly appealed to the sympathy of the jury. Specifically, AICPCU points to Posner's introduction of evidence that she was a single mother with limited financial means (as compared to a large corporation) and "thinly veiled references to Posner's discrimination lawsuit." This Court disagrees.

"[T]he trial judge has considerable discretion in determining whether conduct by counsel is so prejudicial as to require a new trial." *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (internal quotations omitted). Improper remarks "engender sufficient prejudice to mandate the granting of a new trial" where they "have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Id.*

Notably, AICPCU raised its concerns about the introduction of Posner's status as a single mother in a motion *in limine*. This Court denied that motion after concluding that such status would not unfairly prejudice AICPC with respect to its claims and defenses. [*See* ECF 218].

AICPCU has provided no evidence from which this Court could conclude that the introduction of Posner's status as a single mother in comparison to AICPCU's corporate status had any influence on the verdict.  Moreover, while giving the jury instructions, this Court advised the jurors multiple times that sympathy has no role in their deliberations.  Jurors are presumed to follow a trial court's instructions, *see Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019), and AICPCU has presented no evidence to reasonably conclude that the jury did not do so here.

AICPCU also raised its concerns with respect to the introduction of evidence referring to Posner's unrelated employment discrimination claims in a motion *in limine*.  This Court granted that motion, precluding the introduction of any evidence of Posner's discrimination claims.  [ECF 237].  Importantly, and consistent with this Court's prior ruling, the fact that Posner has a pending lawsuit for employment discrimination against AICPCU was never mentioned during trial, nor did Posner testify that she believed she had been discriminated against during her employment.  In the absence of any such reference to Posner's other lawsuit, AICPCU has not met its burden of showing a reasonable probability that the verdict was influenced by any such references during trial.

**CONCLUSION**

For the reasons set forth, this Court finds that the jury's verdict on Posner's counterclaims for unpaid commissions was legally inconsistent with this Court's interpretation of the commission agreements in the Court's summary judgment opinion and, thus, must be modified pursuant to Rule 59.  Plaintiffs' remaining arguments for relief under Rules 50 and 59 are denied.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.